98 S.W.3d 280 (2003)
In the Matter of C.D.T., III.
No. 01-02-00525-CV.
Court of Appeals of Texas, Houston (1st Dist.).
January 2, 2003.
*281 William B. Connolly, William B. Connolly & Associates, Houston, for Appellant.
Alan Curry, Asst. Dist. Atty., Houston, for State.
Panel consists of Justices TAFT, ALCALA, and PRICE.

OPINION
FRANK C. PRICE,[*] Justice.
In three points of error, C.D.T. argues the trial court erred when it transferred him from the Texas Youth Commission (TYC) to the Texas Department of Criminal JusticeInstitutional Division (TDCJ-ID). Specifically, appellant argues (1) the trial court was required to conduct a "gate keeper" hearing relative to appellant's objections to the evidence, (2) the evidence was insufficient to support the transfer, and (3) the trial court erred when it failed to provide C.D.T. with some of the TYC documents. We affirm.

Background
On January 21, 1998, appellant was found to have engaged in delinquent conduct as a result of his commission of an aggravated robbery. During the first four years of his five-year commission to the TYC, appellant was involved in 95 additional acts of misconduct and was placed in security 30 times. Appellant escaped from a TYC facility on one occasion, and he was accused of committing seven assaults, two of which were on TYC staff members.
The TYC filed a motion requesting that appellant be transferred from TYC to TDCJ-ID for the remainder of his five-year sentence. During the hearing on TYC's motion to transfer, the trial court heard testimony from Tom Gorsuch, Ph.D., a psychologist and Linda Wittig, M.D., a psychiatrist. Both had examined appellant and advised the trial court against the transfer. Dr. Wittig noted in her report that appellant had obtained his GED and had even taken some college courses since his commission to the TYC. She recognized that appellant had received certificates in welding, small engines and repair, auto mechanics, building trades, and horticulture in addition to numerous other vocational programs. Dr. Wittig described appellant as having a "Conduct Disorder, perhaps of the Childhood Onset Type," but she ultimately concluded that transfer to TDCJ-ID would not be necessary.
*282 The court also heard testimony from Leonard Cucolo, the court liaison for the TYC. Cucolo testified that appellant's two TYC psychologists were Dr. Barton and Dr. Linda Knight, and Cucolo provided the court with appellant's TYC records. The TYC's summary report concluded that appellant was "seen as a high risk to reoffend." The trial court asked Cucolo why the TYC waited until four years of a five-year commission had expired to consider transferring appellant. Cucolo explained that, after three years of commission, appellant was eligible for parole. Once the TYC evaluated him for parole, Dr. Barton determined appellant was a threat to society.
Lastly, the trial court heard from Joyce Taylor, appellant's mother. Taylor testified her son expressed remorse, and she had a job for him once he got out of the TYC. She admitted, however, that despite her support in the past, appellant continued to get in trouble.
The trial court transferred appellant to TDCJ-ID, and he appeals the transfer.

"Gate Keeper"
In point of error one, appellant argues the trial court was required to conduct a "gate keeper" hearing relative to appellant's objections and challenges to the relevance and reliability of the evidence and opinions of the TYC representatives prior to the admission of their opinions into evidence.
Appellant filed a "Notice of Objection to Introduction of Testimony as Provided under Daubert, Robinson, and Kelly and Request for `Gate Keeper' Hearing," and he re-urged his objection at the transfer hearing.
In his appellate brief, appellant identified the objectionable testimony found in the State's exhibits as follows:
1. The admission of Dr. Barton and Dr. Knight's reports into evidence over contrary evidence;
2. Dr. Barton's opinion regarding appellant's lack of remorse;
3. Inaccurate information presented by TYC, some of which was based upon a review of and re-hash of another psychologist's prior work;
4. The TYC psychologist reports that were put into evidence, incorrectly and improperly diagnosed appellant, who did not meet the diagnosis for Anti-Social Personality Disorder or Conduct Disorder; and
5. The methodology of a psychological interview of appellant would have a big influence on the results of an assessment and evaluation.
Further, he argues that, as a direct result of the trial court's refusal to conduct a "gate keeper" hearing and its decision to overrule appellant's objections to the testimony, appellant was deprived of (1) the right to a "fundamental" fair hearing, (2) the right to have compliance with applicable case law under Daubert, DuPont, Kelly, and Nenno, (3) the right to confront the witness against him, and (4) the right of due process.
The release or transfer hearing is a "second chance hearing" after appellant has already been sentenced to a determinate number of years. It is not part of the guilt/innocence determination, consequently it need not meet the extensive due process requirements of an actual trial. In re D.S., 921 S.W.2d 383, 387 (Tex.App.-Corpus Christi 1996, writ dism'd w.o.j.). During such a hearing, the trial court may consider written reports from probation officers, professional court employees, or professional consultants, in addition to the testimony of the witnesses. Tex. Fam.Code Ann. § 54.11(d) (Vernon Supp.2002); C.D.R. v. State, 827 S.W.2d 589, 592 (Tex. *283 App.-Houston [1st Dist.] 1992, no writ). Furthermore, a juvenile has no right of confrontation at a discretionary transfer hearing. In re G.B.B., 638 S.W.2d 162, 164 (Tex.App.-Houston [1st Dist.] 1982, no writ). A juvenile is not entitled to a jury trial at the transfer hearing and the juvenile court may consider hearsay in the form of reports and evaluations. In re E.D.M., 916 S.W.2d 9, 11 (Tex.App.-Houston [1st Dist.] 1995, no writ). Therefore, we hold the appellant's constitutional rights were not violated by the admission of any hearsay or allegedly unreliable evidence in this case.
We overrule point of error one.

Sufficiency
In point of error two, appellant contends the case should not be reviewed under an abuse of discretion standard of review and the evidence was insufficient under any applicable standard.
Appellant, citing In re T.D.H., 971 S.W.2d 606, 610 (Tex.App.-Dallas 1998, no writ); K.L.M. v. State, 881 S.W.2d 80, 84 (Tex.App.-Dallas 1994, no writ); C.D.R. v. State, 827 S.W.2d 589, 592-93 (Tex.App.-Houston [1st Dist.] 1992, no pet), concedes that "the law indicates that a transfer order would be reversed for abuse of discretion." On appeal, however, he asserts that an abuse of discretion standard is not the appropriate standard, and he argues the case should be reversed because the evidence is legally and factually insufficient to support the trial court's decision.
We will follow the existing case law which uniformly holds that, when reviewing the trial court's decision to transfer a juvenile from TYC to the TDCJ, the reviewing court employs an abuse of discretion standard. See In re J.M.O., 980 S.W.2d 811, 812-13 (Tex.App.-San Antonio 1998, no pet.). The reviewing court must view the entire record to determine if the trial court acted without reference to guiding rules and in an arbitrary manner. Id. at 813. If some evidence exists to support the trial court's decision there is no abuse of discretion. In re R.G., 994 S.W.2d 309, 312 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).
Appellant re-urges his complaint that the trial court erred when it allowed the TYC reports and Cucolo's testimony that was "derived from the reports." He claims that, when this "inadmissible evidence is excised from the record, there is no evidence to support the Order of the trial court."
Because we hold the evidence was properly before the trial court, we must now review the evidence to determine if some evidence exists to support the trial court's decision. The trial court heard testimony that, during the first four years of his five-year commission to the TYC, appellant was involved in 95 additional acts of misconduct and was placed in security 30 times. Appellant escaped from a TYC facility on one occasion, and he was accused of committing seven assaults, two of which were on TYC staff members.
Some evidence exists to support the trial court's decision, therefore, there was no abuse of discretion. See R.G., 994 S.W.2d at 312.
We overrule point of error two.
Failure to Provide Documents
In point of error three, appellant argues the trial court's failure to provide counsel with the TYC documents in the court's file, which may have been considered by the trial court, requires reversal.
Section 54.11(d) of the Texas Family Code provides that, at least one day before the release or transfer hearing, the court shall provide a defendant's counsel with *284 access to all written matter to be considered by the court. Tex. Fam.Code Ann. § 54.11(d). Here, appellant complains of a series of letters Cucolo sent to the trial court after the initial commencement of the hearing, but before the final determination of the motion. The letters were some of appellant's correspondence intercepted while appellant was in county jail awaiting the conclusion of his transfer hearing.
We abated the case for a hearing for the trial court to make a finding of fact indicating whether, in making its transfer decision, it considered the four letters. The trial court's finding states, it "does not know whether [it] considered those four items of appellant's correspondence."[1]
Despite its equivocation, assuming the trial court did in fact consider the documents, appellant has presented no evidence or even argument that he was harmed by the trial court's alleged consideration of the four letters.[2]See Tex.R.App. P. 44.
We overrule point of error three.

Conclusion
We affirm the judgment.
NOTES
[*] The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.
[1] During the abatement hearing, both appellant's counsel and the prosecutor stated they were unaware Cucolo had added the letters to the court's file. Appellant's counsel discovered the letters when preparing the appeal.
[2] While counsel did not have access to the actual documents, he had access to the information contained in the documents through his client. These were not documents or reports generated by a third person, these were letters written by appellant.