**In the Matter of M.P., A Child.**

No. 10–06–00008–CV.

Court of Appeals of Texas,
Waco.

Feb. 7, 2007.

100

Lane D. Thibodeaux, Law Office of Lane D. Thibodeaux, Bryan, for appellant.

Bill R. Turner, Brazos County Dist. Atty., Bryan, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

**LEAD OPINION**

FELIPE REYNA, Justice.

A jury found that M.P. had engaged in delinquent conduct by committing two counts of indecency with a child and one count of aggravated sexual assault of a child. The court committed M.P. to the Texas Youth Commission without a determinate sentence. M.P. contends in his sole issue that the court violated his right of confrontation under the federal and state constitutions, and particularly under

*Crawford v. Washington,* by admitting during the disposition phase a written report prepared by a juvenile probation officer which contains hearsay.

During the disposition phase, the State offered a Juvenile Court Investigation Report prepared by M.P.'s juvenile probation officer, Sha'Vonne Brown–Lewis. The report contains general background information, M.P.'s referral history, the history of services provided by the juvenile department, a narrative of "impressions" reviewing M.P.'s history and briefly stating the probation officer's recommendation that M.P. be committed to TYC, and a concluding section reviewing the dispositional alternatives and providing a list of reasons TYC is the appropriate disposition.

The report is supported by a collection of "over thirty" disciplinary referrals M.P. has received at different schools.[1] These referrals largely consist of brief narratives prepared by the teachers who made the referrals describing the conduct and the actions taken. Some referrals include witness statements. Others include documentary evidence.

M.P. objected when the State offered the report in evidence on the basis that "information both contained in the report and, frankly, the totality of Ms. Brown's testimony" violate *Crawford v. Washington* and the confrontation clauses of the federal and state constitutions. Counsel specifically identified Brown–Lewis's references to M.P.'s various referrals as a matter of concern.

After taking the matter under advisement, the court advised the parties that it would overrule the objection based on the reasoning of Indiana's Fourth District Court of Appeals in *C.C. v. State.* 826

---

1. The report itself is nine pages, excluding the cover page. There are about ninety pages of supporting documentation appended to the report. "Over thirty" referrals appears to be a significant understatement. "Over sixty" would be more accurate.

N.E.2d 106 (Ind.Ct.App.2005). The court followed the recommendation of Brown–Lewis and committed M.P. to TYC.

## Preservation

■ The State contends that M.P. did not properly preserve this issue for appellate review because he failed to identify for the trial court the particular portions of the report which he considered to be inadmissible.

■ To preserve a complaint for appellate review, Rule of Evidence 103(a)(1) requires "a timely objection ... stating the specific ground of objection, if the specific ground was not apparent from the context." Tex.R. Evid. 103(a)(1); *see also* Tex.R.App. P. 33.1(a)(1)(A). Stated another way, a "timely" and "specific" objection is required. *See, e.g., Kerr–McGee Corp. v. Helton,* 133 S.W.3d 245, 251 (Tex.2004); *Residential Dynamics, LLC v. Loveless,* 186 S.W.3d 192, 195 (Tex.App.-Fort Worth 2006, no pet.).

Before and since the adoption of the Rules of Evidence in 1982,[2] Texas courts in civil appeals have held, "A general objection to evidence as a whole, whether it be oral or documentary, which does not point out specifically the portion objected to, is properly overruled if any part of it is admissible." *Brown & Root, Inc. v. Haddad,* 142 Tex. 624, 180 S.W.2d 339, 341 (1944) (quoted by *Speier v. Webster College,* 616 S.W.2d 617, 619 (Tex.1981)); ac-

cord *In re K.C.P.,* 142 S.W.3d 574, 583 (Tex.App.-Texarkana 2004, no pet.); *Leaird's, Inc. v. Wrangler, Inc.,* 31 S.W.3d 688, 692 (Tex.App.-Waco 2000, pet. denied).[3] This principle is a particular application of the requirement that an objection be "specific."

However, as indicated by the plain language of Rule 103(a)(1), the specificity of an objection is less important when the basis for the objection is "apparent from the context." Tex.R. Evid. 103(a)(1). Thus, Texas courts have found issues adequately preserved for appellate review even when the objections at issue did not meet the stringent requirements of *Brown & Root* and its progeny. *See, e.g., In re E.A.K.,* 192 S.W.3d 133, 147 n. 24 (Tex. App.-Houston [14th Dist.] 2006, pet. denied); *K.C.P.,* 142 S.W.3d at 578–79; *All Saints Episcopal Hosp. v. M.S.,* 791 S.W.2d 321, 323 (Tex.App.-Fort Worth 1990), *writ granted w.r.m.,* 801 S.W.2d 528 (Tex.1991) (per curiam).

Here, the comments of the prosecutor, defense counsel, and the trial court all indicate that the basis for M.P.'s objection was "apparent from the context." *See* Tex.R. Evid. 103(a)(1); *E.A.K.,* 192 S.W.3d at 147 n. 24; *K.C.P.,* 142 S.W.3d at 578–79; *All Saints Episcopal Hosp.,* 791 S.W.2d at 323. Therefore, we reject the State's contention that M.P. failed to preserve this issue for appellate review.

---

**2.** Rule of Evidence 103(a)(1), promulgated by the Supreme Court in 1982 for civil cases, was identical to the quoted portion of the present Rule 103(a)(1). *See* Tex R. Evid. 103(a)(1), 641–642 S.W.2d (Tex. Cases) xxxvi (1982, amended 1988).

**3.** A similar rule applies in criminal appeals. The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the

former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection.

*Barnes v. State,* 876 S.W.2d 316, 329 (Tex. Crim.App.1994) (quoting *Jones v. State,* 843 S.W.2d 487, 492 (Tex.Crim.App.1992)).

### Due Process in Juvenile Proceedings

■ Juvenile delinquency proceedings must provide constitutionally mandated due process of law. *In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967); *L.G.R. v. State*, 724 S.W.2d 775, 776 (Tex.1987); *Hidalgo v. State*, 983 S.W.2d 746, 751 (Tex.Crim.App.1999); *In re J.S.S.*, 20 S.W.3d 837, 841–42 (Tex.App.-El Paso 2000, pet. denied). However, the process due a juvenile offender does not equate to that due an adult offender in every instance. *See Gault*, 387 U.S. at 14, 87 S.Ct. at 1436; *In re J.R.R.*, 696 S.W.2d 382, 383–84 (Tex.1985) (per curiam); *Hidalgo*, 983 S.W.2d at 751–52; *J.S.S.*, 20 S.W.3d at 842.

The Court of Criminal Appeals has adopted a balancing test it distilled from eight foundational decisions of the Supreme Court of the United States "to determine whether and to what degree" a particular constitutional protection must be afforded a juvenile.[4] *Lanes v. State*, 767 S.W.2d 789, 794 (Tex.Crim.App.1989); *accord Hidalgo*, 983 S.W.2d at 751. This test requires an appellate court to "balance[ ] the function that [the asserted] constitutional or procedural right serve[s] against its impact or degree of impairment on the unique processes of the juvenile court." *Lanes*, 767 S.W.2d at 794; *accord Hidalgo*, 983 S.W.2d at 751–52; *J.S.S.*, 20

S.W.3d at 842–44; *S.D.G. v. State*, 936 S.W.2d 371, 378–79 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

The Court recognized in Hidalgo that the justifications for affording fewer constitutional protections to juveniles than adults have lessened in recent years as the juvenile justice system has become more punitive than rehabilitative.

> In adopting this balancing test this Court also announced a desire to "dispel the antiquated and unrealistic resistance to procedural safeguards" in the juvenile court system. We observed that due to the scarcity of treatment programs, professional training, and financial resources the juvenile system had become more punitive than rehabilitative. Rather than ignore these realities we chose to balance the "aspirations of the juvenile court and the grim realities of the system."

Recent amendments to the Juvenile Justice Code change[d] juvenile adjudication and punishment, causing the "grim realities" to be even more salient. As this Court recently recognized in *Blake v. State*, 971 S.W.2d 451, 460 (Tex. Crim.App.1998), juveniles now face consequences similar to those faced by adults. Most apparent is the fact juveniles may now be subject to a forty-year term of imprisonment. *Blake* recog-

---

4. The eight foundational decisions in chronological order: (1) *Haley v. Ohio*, 332 U.S. 596, 601, 68 S.Ct. 302, 304, 92 L.Ed. 224 (1948) (coerced confession cannot be used against juvenile); (2) *Kent v. United States*, 383 U.S. 541, 557, 86 S.Ct. 1045, 1055, 16 L.Ed.2d 84 (1966) (juvenile entitled to procedural protections in transfer hearing); (3) *In re Gault*, 387 U.S. 1, 31–55, 87 S.Ct. 1428, 1445–58, 18 L.Ed.2d 527 (1967) (juvenile has due process rights of notice, counsel, confrontation, cross-examination, and privilege against self-incrimination); (4) *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970) (State must prove allegation of delin-

quent conduct beyond a reasonable doubt); (5) *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S.Ct. 1976, 1986, 29 L.Ed.2d 647 (1971) (juvenile has no constitutional right to jury trial); (6) *Breed v. Jones*, 421 U.S. 519, 528–29, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (double jeopardy protections apply to juveniles); (7) *Schall v. Martin*, 467 U.S. 253, 281, 104 S.Ct. 2403, 2419, 81 L.Ed.2d 207 (1984) (pretrial detention of juvenile does not violate due process); (8) *New Jersey v. T.L.O.*, 469 U.S. 325, 341–42, 105 S.Ct. 733, 742–43, 83 L.Ed.2d 720 (1985) (Fourth Amendment does not require probable cause to justify school search).

nized some of the legislative changes making the juvenile system more punitive than rehabilitative:

> [T]he legislature expanded the definitions of delinquent conduct, expanded the list of felony offenses that authorize criminal proceedings for juveniles over the age of fourteen, authorized confinement in the Texas Department of Criminal Justice for various grades of felony and habitual felony conduct, categorized certain adjudications as "final felony convictions" that can be used as enhancements for repeat offenders, removed provisions forbidding the maintenance of centralized photograph and fingerprint records, repealed laws about sealing and destruction of juvenile records, and mandated the use of the Texas Rules of Criminal Evidence and the evidentiary provisions of Chapter 38 of the Code of Criminal Procedure instead of their civil counterparts for judicial proceedings involving juveniles.

*Blake,* 971 S.W.2d at 460 n. 28. These recent legislative changes continue to erode the original justifications for denying juveniles the same procedural protections as adults.

*Hidalgo,* 983 S.W.2d at 751–52 (other citations and footnote omitted).

Accordingly, we must determine whether the disposition phase of a juvenile delinquency proceeding is the type of proceeding to which the Sixth Amendment right of confrontation[5] applies. If so, then we must examine the impact the application of that right would have on the juvenile justice system. *See id.* at 752; *J.S.S.,* 20 S.W.3d at 842.

## Sixth Amendment Right of Confrontation

The right of confrontation is one of several rights provided by the Sixth Amendment:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. CONST. AMEND. VI.

In *Ohio v. Roberts,* the Supreme Court of the United States held that the admission of hearsay evidence did not violate a defendant's Sixth Amendment right of confrontation if the declarant was unavailable to testify and the statement bore adequate indicia of reliability either because it: (1) fell within a firmly rooted hearsay exception, or (2) was shown to have particularized guarantees of trustworthiness. 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Twenty-four years later, the Court dramatically changed its interpretation of the right of confrontation in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). There, the Court discarded the indicia-of-reliability test of *Roberts,* at least for "testimonial" evidence, and held that the admission of hearsay violates a defendant's Sixth Amendment right of confrontation unless the declarant is unavailable and the defendant has had a prior opportunity for

---

**5.** In *Hidalgo,* the Court of Criminal Appeals addressed a juvenile's Sixth Amendment right to counsel in connection with a court-ordered psychological examination under section 54.02(d) of the Juvenile Justice Code. *See Hidalgo v. State,* 983 S.W.2d 746, 748 (Tex. Crim.App.1999) (citing TEX. FAM.CODE ANN. § 54.02(d)).

cross-examination. *Id.* at 68, 124 S.Ct. at 1374.

Because of the sea change effected by *Crawford*, appellate courts have been called upon with some frequency to construe *Crawford* and to determine its application to particular issues. *See* Robert Wm. Best, *To Be or Not To Be Testimonial? That is the Question: 2004 Developments in the Sixth Amendment*, 2005 ARMY LAW. 65, 87 (2005) ("Every week, at least twenty opinions are released that make a citation to *Crawford*."). Before *Crawford*, little attention was paid to the issue of whether the Sixth Amendment right of confrontation even applied to the punishment phase of trial. Since *Crawford*, this issue has been addressed by a multitude of state and federal courts.

At first blush, it would seem that this question could be promptly resolved by determining whether the punishment phase of trial is part of a "criminal prosecution," because the Sixth Amendment (and ostensibly each of its guarantees), on its face, applies to "all criminal prosecutions." However, the divergence of appellate decisions on this issue leads to the conclusion that the guarantees of the Sixth Amendment do not apply with equal force at every stage of a criminal prosecution.

For example, in *Mempa v. Rhay* the Supreme Court held that a criminal defendant has a Sixth Amendment right to counsel during the punishment phase because this right applies "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U.S. 128, 134, 88 S.Ct. 254, 256–57, 19 L.Ed.2d 336 (1967).

In *Estelle v. Smith*, the Court construed the Sixth Amendment right to counsel quite broadly, beyond the trial on the merits. 451 U.S. 454, 470, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981).

It is central to [the Sixth Amendment] principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.

*Id.* (quoting *United States v. Wade*, 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967)).

Conversely, the Court has construed the Sixth Amendment right to jury trial more narrowly. Thus, the Court has held that there is no right to jury trial for a petty offense, defined as one in which the punishment assessed is no more than six months. *Lewis v. United States*, 518 U.S. 322, 325–26, 116 S.Ct. 2163, 2166–67, 135 L.Ed.2d 590 (1996) (citing *Duncan v. Louisiana*, 391 U.S. 145, 159, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491 (1968)).

The Court has also held on several occasions that there is no Sixth Amendment right to have a jury assess punishment. *See, e.g., Morgan v. Illinois*, 504 U.S. 719, 725–26, 112 S.Ct. 2222, 2228, 119 L.Ed.2d 492 (1992); *Spaziano v. Florida*, 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984); *accord Barrow v. State*, 207 S.W.3d 377, 380 (Tex.Crim.App.2006).

In *Apprendi v. New Jersey* and its progeny however, the Court has held that the Sixth Amendment right to jury trial does extend to the punishment phase insofar as the State may seek imposition of a sentence on the basis of findings beyond those "reflected in the jury verdict or admitted by the defendant." *United States v. Booker*, 543 U.S. 220, 232, 125 S.Ct. 738, 749, 160 L.Ed.2d 621 (2005) (quoting *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004)); *see also Ring v. Arizona*, 536 U.S. 584, 602, 122 S.Ct. 2428, 2439–40, 153 L.Ed.2d 556

(2002); *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000).

The Court has also extended at least a sub-part of a defendant's Sixth Amendment right of confrontation to the punishment phase. "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at *every stage* of his trial." *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970) (emphasis added) (citing *Lewis v. United States*, 146 U.S. 370, 374–75, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892)) ("Out of abundant tenderness for the right secured to the accused by our constitution to be confronted by the witnesses against him, and to be heard by himself or counsel, our court has gone a step further, and held that it must be shown by the record that the accused was present in court pending the trial.");[6] *accord Garcia v. State*, 149 S.W.3d 135, 140 (Tex.Crim.App.2004) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom during his trial."); *Baltierra v. State*, 586 S.W.2d 553, 556 (Tex.Crim.App.1979) ("within the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at *all phases* of proceedings against him") (emphasis added); *Kessel v. State*, 161 S.W.3d 40, 45 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd), *cert. denied,* —— U.S. ——, 126 S.Ct. 484, 163 L.Ed.2d 369 (2005) ("One of the most basic rights guaranteed by the Confrontation Clause is the defendant's right to be present in the courtroom at every stage of his trial."); *In re C.T.C.*, 2

S.W.3d 407, 410 (Tex.App.-San Antonio 1999, no pet.) (juvenile "has the same constitutional right to be present at the proceedings as a criminal defendant has").

Thus, in *Kessel* the Fourteenth Court of Appeals reversed a defendant's punishment where the trial court excluded the defendant from the courtroom during the punishment phase. *See Kessel,* 161 S.W.3d at 47–49. And in *Garcia,* the Court of Criminal Appeals reversed the defendant's conviction because he did not speak English and no interpreter had been appointed to translate the proceedings for him. *See Garcia,* 149 S.W.3d at 145–46; *see also Baltierra,* 586 S.W.2d at 559; *Miller v. State,* 177 S.W.3d 1, 8 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

From these decisions we conclude that the Sixth Amendment right of confrontation applies in some, but not all, respects to the punishment phase of an adult criminal trial.

## Texas Decisions

No Texas court has expressly determined whether the Sixth Amendment right of confrontation applies during the punishment phase of an adult criminal trial or the disposition phase of a juvenile delinquency proceeding. *Cf. Young v. State,* No. 02–04–501–CR, 2005 WL 3008442, at *1, 2005 Tex.App. LEXIS 9498, at *3–4 (Tex.App.-Fort Worth Nov. 10, 2005, no pet.) (not designated for publication) ("We believe the right to counsel applies even at punishment in a bench trial. And until a higher court instructs us to the contrary, we shall apply the Sixth Amendment in its entirety, even to bench trials."). Rather, because the Court of Criminal Appeals and six intermediate courts of appeals have ad-

---

**6.** In *Lewis,* the Supreme Court was quoting the High Court of Errors and Appeals of Mississippi. *See Lewis v. United States,* 146 U.S. 370, 374–75, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892) (quoting *Dyson v. State,* 26 Miss. 362, 1853 WL 2394, at *15 (Miss.Err. & App. 1853)).

dressed the merits of claims that the right of confrontation was violated at punishment (or have found those claims waived by a failure to object), these courts have at least implicitly concluded that there is a Sixth Amendment right of confrontation at punishment.[7]

In similar fashion, the Eastland Court of Appeals has implicitly concluded that the Sixth Amendment right of confrontation applies during a hearing on a motion to modify a juvenile disposition when that court addressed the merits of the appellant's confrontation complaint. *See In re J.R.L.G.*, No. 11–05–002–CV, 2006 WL 1098944, at *1–2, 2006 Tex.App. LEXIS 3344, at *2–6 (Tex.App.-Eastland Apr. 27, 2006, no pet.) (mem. op.).

Conversely, this Court and three others have concluded that a juvenile has no right of confrontation at a discretionary transfer hearing. *See In re S.M.*, 207 S.W.3d 421, 425 (Tex.App.-Fort Worth 2006, pet. filed); *In re D.L.*, 198 S.W.3d 228, 229–30 (Tex. App.-San Antonio 2006, pet. denied); *In re T.D.B.*, No. 10–05–015–CV, 2006 WL 408417, at *1, 2006 Tex.App. LEXIS 1491,

at *3 (Tex.App.-Waco Feb. 22, 2006, no pet.) (mem. op.); *In re C.D.T.*, 98 S.W.3d 280, 283 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

And two Texas courts have held that a defendant in a community-supervision revocation proceeding has only a limited right of confrontation under the Due Process Clause of the Fourteenth Amendment rather than under the Sixth Amendment. *See Diaz v. State*, 172 S.W.3d 668, 669–72 (Tex.App.-San Antonio 2005, no pet.) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)) (other citations omitted); *Smart v. State*, 153 S.W.3d 118, 120–21 (Tex.App.-Beaumont, pet.ref'd) (same), *cert. denied*, —— U.S. ——, 126 S.Ct. 663, 163 L.Ed.2d 527 (2005).

### Decisions in Other Jurisdictions

The federal courts of appeals have virtually unanimously concluded post-*Crawford* that there is no right of confrontation at sentencing.[8] Courts in at least eleven oth-

---

7. *See, e.g., Russeau v. State*, 171 S.W.3d 871, 880–81 (Tex.Crim.App.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 2982, 165 L.Ed.2d 989 (2006); *Stringer v. State*, 196 S.W.3d 249, 251–52 (Tex.App.-Fort Worth 2006, pet. granted); *Nunes v. State*, No. 05–04–1741–CR, 2006 WL 762841, at *7, 2006 Tex.App. LEXIS 2301, at *20 (Tex.App.-Dallas Mar. 27, 2006, pet. ref'd) (not designated for publication); *Smith v. State*, No. 03–05–399–CR, 2006 WL 663712, at *4–5, 2006 Tex.App. LEXIS 2062, at *9–12 (Tex.App.-Austin Mar. 16, 2006, pet. ref'd) (not designated for publication); *Ford v. State*, 179 S.W.3d 203, 208–09 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd), *cert. denied*, —— U.S. ——, 127 S.Ct. 281, 166 L.Ed.2d 215 (2006); *Barela v. State*, No. 08–02–492–CR, 2004 WL 2192604, at *5–8, 2004 Tex.App. LEXIS 8802, at *13–20 (Tex. App.-El Paso Sept. 30, 2004) (not designated for publication), *aff'd on other grounds*, 180 S.W.3d 145 (Tex.Crim.App.2005); *Salazar v. State*, 31 S.W.3d 726, 728–29 (Tex.App.-Cor-

pus Christi 2000), *rev'd on other grounds*, 86 S.W.3d 640 (Tex.Crim.App.2002).

8. *See United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir.2006); *United States v. Bustamante*, 454 F.3d 1200, 1202–03 (10th Cir. 2006); *United States v. Littlesun*, 444 F.3d 1196, 1199–1201 (9th Cir.), *cert. denied*, —— U.S. ——, 127 S.Ct. 248, 166 L.Ed.2d 149 (2006); *United States v. Brown*, 430 F.3d 942, 944 (8th Cir.2005); *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1604, 164 L.Ed.2d 325 (2006); *United States v. Kirby*, 418 F.3d 621, 627–28 (6th Cir.2005); *United States v. Roche*, 415 F.3d 614, 618 (7th Cir.), *cert. denied*, —— U.S. ——, 126 S.Ct. 671, 163 L.Ed.2d 541 (2005); *United States v. Luciano*, 414 F.3d 174, 179 (1st Cir.2005); *United States v. Martinez*, 413 F.3d 239, 242–44 (2d Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1086, 163 L.Ed.2d 902 (2006); *see also United States v. Statts*, 189 Fed.Appx. 237, 238

er states have likewise held that there is no right of confrontation at sentencing.[9] Courts in two states have held in similar fashion that a juvenile has no right of confrontation during the disposition phase of trial. *C.C. v. State*, 826 N.E.2d 106, 111 (Ind.Ct.App.2005); *In re Romeo C.*, 33 Cal. App.4th 1838, 40 Cal.Rptr.2d 85, 89–91 (1995). But the high court of only one state has expressly held that the Sixth Amendment right of confrontation applies at sentencing. *Rodgers v. State*, 948 So.2d 655, 663 (Fla. 2006) (per curiam).

In some states, courts have not taken definitive positions.[10] By comparison, the Arizona Supreme Court has recognized a limited right of confrontation at sentencing. *State v. McGill*, 213 Ariz. 147, 140 P.3d 930, 942 (2006) (Confrontation Clause applies to hearsay offered at punishment to prove an aggravating factor but not to hearsay offered in rebuttal of mitigating evidence); *see also Dayton v. State*, 120 P.3d 1069, 1072 (Alaska Ct.App. 2005) ("a judge who is making findings of fact at sentencing proceedings can rely on out-of-court statements described in the pre-sen-

tence report for proof of the matters asserted, unless the defendant offers a testimonial denial of those statements and submits to cross-examination, in which case the State must support its assertions with live testimony.").

## Sixth Amendment Summary

■ There is an indisputable Sixth Amendment right to counsel during the punishment phase and an indisputable right to be present during the punishment phase, the latter of which is a part of the Sixth Amendment right of confrontation. However, there is only a limited Sixth Amendment right to a jury during the punishment phase under *Apprendi* at its progeny. And most state and federal courts which have directly addressed the issue have concluded that there is no Sixth Amendment right of confrontation at sentencing.

Nevertheless, the Court of Criminal Appeals and a significant number of the intermediate appellate courts in Texas have at least implicitly concluded that a defendant

---

(4th Cir.2006) (per curiam) (not designated for publication); *United States v. Cabbagestalk*, 184 Fed.Appx. 191, 195–96 (3d Cir.2006) (not designated for publication).

9. *See People v. Arbuckle*, 22 Cal.3d 749, 150 Cal.Rptr. 778, 781, 587 P.2d 220 (1978); *People v. Vensor*, 116 P.3d 1240, 1243 (Colo.Ct. App.2005), *cert. granted*, 2005 WL 1864139, 2005 Colo. LEXIS 715 (Colo. Aug. 8, 2005); *State v. Henderson*, 2004 WL 2095111, at *9 n. 31, 2006 Conn.Super. LEXIS 2395, at *36 n. 31 (Conn.Super.Ct.2004) (not designated for publication); *Sivak v. State*, 112 Idaho 197, 731 P.2d 192, 211 (1986); *Commonwealth v. Wilcox*, 446 Mass. 61, 841 N.E.2d 1240, 1248 (2006); *Holland v. State*, 93–DP–00494–SCT, ¶ 48, 705 So.2d 307, 328 (Miss. 1997); *State v. Moore*, 2006-Ohio-816, ¶ 8, 2006 WL 439961, at *1, 2006 Ohio App. LEXIS 732, at *4 (Ohio Ct.App.2006); *McDonald v. Belleque*, 206 Or.App. 655, 138 P.3d 895, 897, *pet. denied*, 341 Or. 392, 143 P.3d 544

(2006) (unpublished table decision); *Moses v. Commonwealth*, 27 Va.App. 293, 498 S.E.2d 451, 455 (1998); *State v. Peters*, 237 Wis.2d 741, ¶ 11 n. 10, 2000 WI App 154, ¶ 11 n. 10, 237 Wis.2d 741, 615 N.W.2d 655, 659 n. 10 (2000), *rev'd on other grounds*, 2001 WI 74, 244 Wis.2d 470, 628 N.W.2d 797 (2001).

10. *See Cockerham v. State*, 933 P.2d 537, 539 n. 10 (Alaska 1997) (existence of right of confrontation at sentencing "is debatable"); *State v. Berry*, 168 S.W.3d 527, 539–40 (Mo. Ct.App.2005) ("There is ample doubt and confusion about the application of the Sixth Amendment in this context."); *Ledbetter v. State*, 933 P.2d 880, 895 (Okla.Crim.App. 1997) ("Application of the Confrontation Clause to punishment proceedings in capital cases is not clear"); *State v. Stephenson*, 195 S.W.3d 574, 590–91 (Tenn.2006) (noting that federal courts hold that right of confrontation does not apply at sentencing, but not expressly taking that position).

has a Sixth Amendment right of confrontation at sentencing by addressing the merits of such claims or concluding that such claims were waived.

Here, because this is a juvenile proceeding, we need not determine the precise parameters of the Sixth Amendment right of confrontation during the punishment phase of an adult criminal trial. We do conclude, however, that at a minimum an adult criminal defendant has a constitutional right of confrontation at sentencing: (1) in cases in which the State seeks imposition of a sentence on the basis of findings beyond those "reflected in the jury verdict or admitted by the defendant"; *see Booker*, 543 U.S. at 232, 125 S.Ct. at 749; *McGill*, 140 P.3d at 942; and (2) whenever the State calls a witness to testify at punishment. *See Allen*, 397 U.S. at 338, 90 S.Ct. at 1058; *Garcia*, 149 S.W.3d at 140; *Baltierra*, 586 S.W.2d at 556; *Kessel*, 161 S.W.3d at 45; *C.T.C.*, 2 S.W.3d at 410.

### Impact on Juvenile Proceedings

■ Having determined that there is at least a limited Sixth Amendment right of confrontation during the punishment phase of an adult criminal trial, we now examine the impact the application of that right would have on the juvenile justice system. *See Hidalgo*, 983 S.W.2d at 752; *J.S.S.*, 20 S.W.3d at 842.

The Texas juvenile justice system requires courts to balance the need for public safety and punishment for criminal conduct with the medical, educational and rehabilitative needs and the best interests of the juvenile delinquent, while simultaneously ensuring that his "constitutional and other legal rights" are protected. *See* TEX. FAM.CODE ANN. § 51.01 (Vernon 2002). Among other purposes, the juvenile justice system is supposed to:

· provide treatment, training, and rehabilitation that emphasizes the accountability and responsibility of both the parent and the child for the child's conduct;

· provide for the care, the protection, and the wholesome moral, mental, and physical development of children coming within its provisions; and

· achieve the foregoing purposes in a family environment whenever possible, separating the child from the child's parents only when necessary for the child's welfare or in the interest of public safety and when a child is removed from the child's family, to give the child the care that should be provided by parents.

*Id.* § 51.01(2)(C), (3), (5).

There appears to be only one potential fact issue to be determined during the disposition phase of a juvenile proceeding which may permit a disposition more severe than authorized by findings "reflected in the jury verdict [from the adjudication phase]."[11] *See Booker*, 543 U.S. at 232, 125 S.Ct. at 749. That issue is whether the juvenile engaged in "habitual felony conduct." *See* TEX. FAM.CODE ANN. § 54.04(m) (Vernon Supp.2006).[12]

---

**11.** There are numerous findings which may affect a juvenile's disposition in some manner, but such findings will not alter the applicable "punishment range." *See, e.g.,* TEX. FAM.CODE ANN. § 54.04(g) (Vernon Supp.2006) (deadly weapon finding), § 54.0406 (Vernon 2002) (finding that juvenile possessed, used, or exhibited handgun); § 54.041(b) (Vernon Supp. 2006) (restitution), § 54.042 (Vernon Supp. 2006) (license suspension); *see also Harris v.*

*United States*, 536 U.S. 545, 568–69, 122 S.Ct. 2406, 2420, 153 L.Ed.2d 524 (2002) (finding which increases minimum punishment need not be submitted to jury under *Apprendi*); *Surredin v. State*, 165 S.W.3d 751, 753 n. 2 (Tex.App.-San Antonio 2005, no pet.) (same).

**12.** Habitual felony conduct is conduct violating a penal law of the grade of felony, other than a state jail felony, if:

Nevertheless, under *Apprendi* and its progeny, a finding that a juvenile engaged in "habitual felony conduct" is nothing more than a finding that the juvenile has been previously and sequentially adjudicated of at least two prior felonies. Such a finding does not invoke the Sixth Amendment right to jury trial recognized in *Apprendi*. *See* 530 U.S. at 490, 120 S.Ct. at 2362–63 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added).

Because there are no findings to be made in the disposition phase which would invoke the Sixth Amendment right to jury trial recognized by *Apprendi* and its progeny and because of the importance of effectively addressing the medical, educational and rehabilitative needs and the best interests of the juvenile delinquent as recognized by the Juvenile Justice Code, we conclude that a juvenile has no Sixth Amendment right of confrontation during the disposition phase. *See C.C.,* 826 N.E.2d at 111; *Romeo C.,* 40 Cal.Rptr.2d at 89–91. Such a conclusion preserves the flexibility inherent in the design of the juvenile justice system for ensuring that the needs of each child are adequately addressed in the disposition phase.

█ Nevertheless, the Juvenile Justice Code expressly recognizes that a juvenile must be provided a "fair hearing" and his or her "constitutional and other legal rights" must be "recognized and enforced." Tex. Fam.Code Ann. § 51.01(6). Therefore, we hold that a juvenile has a limited right

of confrontation under the Due Process Clause of the Fourteenth Amendment rather than under the Sixth Amendment. *Cf. Gagnon,* 411 U.S. at 782–86, 93 S.Ct. at 1760–62; *Morrissey,* 408 U.S. at 487–89, 92 S.Ct. at 2603–04; *Diaz,* 172 S.W.3d at 670–71; *Smart,* 153 S.W.3d at 121.

### Due Process Right of Confrontation

The Supreme Court in *Morrissey* explained that this "process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489, 92 S.Ct. at 2604; *accord Diaz,* 172 S.W.3d at 670–71; *Smart,* 153 S.W.3d at 121. The Court discussed this due process right of confrontation in more detail in *Gagnon.*

> An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses. Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the *Morrissey* requirements.

411 U.S. at 782 n. 5, 93 S.Ct. at 1760 n. 5; *accord Diaz,* 172 S.W.3d at 671.

(1) the child who engaged in the conduct has at least two previous final adjudications as having engaged in delinquent conduct violating a penal law of the grade of felony; (2) the second previous final adjudication is for conduct that occurred after the date the first previous adjudication became final; and (3) all appeals relating to the previous adjudications considered under Subdivisions (1) and (2) have been exhausted.

Tex. Fam.Code Ann. § 51.031(a) (Vernon 2002).

Therefore, the Supreme Court's jurisprudence regarding the Sixth Amendment right of confrontation, and particularly *Crawford,* has no application to the disposition phase of a juvenile delinquency proceeding. *See Diaz,* 172 S.W.3d at 672; *Smart,* 153 S.W.3d at 120–21. Instead, the due process right of confrontation described in *Gagnon* applies. *Id.; see also People v. Johnson,* 121 Cal.App.4th 1409, 18 Cal.Rptr.3d 230, 232 (2004); *People v. Turley,* 109 P.3d 1025, 1026 (Colo.Ct.App. 2004); *Jenkins v. State,* 2004 WL 2743556, at *2–3, 2004 Del. LEXIS 549, at *8–9 (Del.2004) (not designated for publication); *Young v. United States,* 863 A.2d 804, 807–08 (D.C.2004); *Peters v. State,* 919 So.2d 624, 626–28 (Fla. Ct.App.2006, review granted); *State v. Rose,* —— P.3d ——, ——, 2006 WL 1459803, at *4 (Idaho Ct. App.2006, review granted); *Reyes v. State,* 853 N.E.2d 1278, 1281–83 (Ind.Ct.App. 2006); *State v. Abd–Rahmaan,* 154 Wash.2d 280, 111 P.3d 1157, 1160–61 (2005).

Under the due process right of confrontation described in *Morrissey* and *Gagnon,* a defendant has "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1762 (quoting *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604); *accord Ex parte Taylor,* 957 S.W.2d 43, 44 (Tex.Crim.App.1997) (per curiam); *Diaz,* 172 S.W.3d at 670; *Smart,* 153 S.W.3d at 121. Thus, the trial court must weigh the defendant's interest in confronting and cross-examining an adverse witness against the State's interest in not having to produce that witness, "particularly focusing on the indicia of reliability of the hearsay offered." *Taylor,* 957 S.W.2d at 46 (citing *United States v. McCormick,* 54 F.3d 214 (5th Cir.1995)) (other citations omitted). This determination must be made on a case-by-case basis.

*Taylor,* 957 S.W.2d at 46; *see also Gagnon,* 411 U.S. at 788–91, 93 S.Ct. at 1763–64; *United States v. Bell,* 785 F.2d 640, 642–43 (8th Cir.1986); *Downie v. Klincar,* 759 F.Supp. 425, 429 (N.D.Ill.1991).

## Texas Constitution

M.P. also contends that the admission of the juvenile probation officer's report violated his right of confrontation under article I, section 10 of the Texas Constitution.

Article I, section 10 provides in pertinent part, "In all criminal prosecutions the accused ... shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor." TEX. CONST. art. I, § 10.

Although M.P. observes some textual differences between this provision and the Sixth Amendment, he does not cite any authority which directly supports a proposition that the right of confrontation under the Texas Constitution varies in any appreciable manner from that provided in the Sixth Amendment. Rather, Texas courts have consistently interpreted these provisions as providing the same protection. *See, e.g., Ex parte Johnson,* 654 S.W.2d 415, 421 (Tex.1983) (orig. proceeding); *Lagrone v. State,* 942 S.W.2d 602, 614 (Tex.Crim.App.1997); *Gomez v. State,* 183 S.W.3d 86, 91 (Tex.App.-Tyler 2005, no pet.).

■ Therefore, assuming without deciding that the protections of article I, section 10 apply to a juvenile offender in any instance, we hold that the right of confrontation under article I, section 10 does not apply to the disposition phase of a juvenile delinquency proceeding just as we have previously determined that the Sixth Amendment right of confrontation does not apply.

## Application

Under *Morrissey* and *Gagnon*, the trial court must balance the defendant's interest in confronting and cross-examining an adverse witness with the State's interest in not having to produce that witness. *Taylor*, 957 S.W.2d at 46; *see also United States v. Rondeau*, 430 F.3d 44, 48 (1st Cir.2005); *United States v. Martin*, 382 F.3d 840, 844–45 (8th Cir. 2004); *Barnes v. Johnson*, 184 F.3d 451, 454 (5th Cir.1999); *Rose*, —— P.3d at ——, 2006 WL 1459803, at *5; *Reyes*, 853 N.E.2d at 1283; *Abd–Rahmaan*, 111 P.3d at 1161–62. Here, the trial court erred because it failed to conduct this balancing inquiry. We must determine whether this error requires reversal. *See In re D.I.B.*, 988 S.W.2d 753, 758–59 (Tex.1999).

According to the Juvenile Justice Code, "[t]he requirements governing an appeal are as in civil cases generally." TEX. FAM. CODE ANN. § 56.01(b) (Vernon Supp.2006). Most courts which have discussed the appropriate harm analysis have concluded that the harm analysis applicable in civil appeals (Rule of Appellate Procedure 44.1) applies to a juvenile delinquency appeal unless the appellant received a determinate sentence. *See In re J.H.*, 150 S.W.3d 477, 485 (Tex.App.-Austin 2004, pet. denied); *In re D.V.*, 955 S.W.2d 379, 380 (Tex.App.-San Antonio 1997, no pet.); *In re D.Z.*, 869 S.W.2d 561, 565–66 (Tex.App.-Corpus Christi 1993, writ denied); *but cf. In re L.R.*, 84 S.W.3d 701, 707 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (expressly declining to decide what harm analysis applies for a case involving "non-determinate sentencing"). Because the court did not impose a determinate sentence, we will apply the harm analysis of Rule 44.1.

Rule 44.1(a) permits reversal for error only if the error: "(1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." TEX.R.APP. P. 44.1(a).

Though the issue has apparently not been decided in Texas, numerous courts in other jurisdictions have found such error harmless in cases in which the hearsay evidence was sufficiently reliable. *See, e.g., United States v. Kelley*, 446 F.3d 688, 692 (7th Cir.2006) (arresting officer's testimony and offense report); *United States v. Hall*, 419 F.3d 980, 987 (9th Cir.2005) ("Hall's interest in excluding [medical records and statements made for purposes of diagnosis or treatment] was thus weak"); *United States v. Morris*, 140 Fed.Appx. 138, 142–43 (11th Cir.2005) (per curiam) (not designated for publication) (written report submitted to probation officer by defendant's case manager at halfway house which was admissible as business record); *State ex rel. Simpson v. Schwarz*, 250 Wis.2d 214, ¶ 22, 2002 WI App 7, ¶ 22, 640 N.W.2d 527, ¶ 22 (2002) (good cause requirement "is always met when the evidence offered in lieu of an adverse witness's live testimony would be admissible under the Wisconsin Rules of Evidence"); *see also United States v. Aspinall*, 389 F.3d 332, 344 (2d Cir.2004) (no balancing required where evidence admissible under recognized hearsay exception); *United States v. Redd*, 318 F.3d 778, 784–85 (8th Cir.2003) (upholding district court's implicit findings with regard to balancing test for "documentary hearsay evidence"); *Williams v. Johnson*, 171 F.3d 300, 306–07 (5th Cir.1999) (failure to conduct balancing test harmless because defendant did not dispute parole violation, proved by parole officer's affidavit, but rather sought to prove reasons for violation).

Here, the juvenile probation officer's report was admissible in the disposition phase under a statutory exception to the hearsay rule. *See* TEX. FAM.CODE ANN. § 54.04(b) (Vernon Supp.2006). Thus, the

Legislature has determined that such reports have some degree of reliability for purposes of determining the appropriate disposition in a particular case. In fact, such reports have been required for the disposition phase of juvenile delinquency proceedings since at least 1973.[13] *See* Act of May 25, 1973, 63d Leg., R.S., ch. 544, § 154.04(b), 1973 Tex. Gen. Laws 1460, 1478. Our research has disclosed at least one appellate decision which has addressed the reliability of such reports. *See In re JV–512016*, 186 Ariz. 414, 923 P.2d 880 (Ct.App.1996). There, the court concluded that the juvenile court did not abuse its discretion by accepting (1) hearsay statements regarding extraneous offenses contained in the juvenile probation report and (2) the juvenile's admissions to a clinician that he had committed these extraneous offenses contained in the clinician's report "as reliable sources of dispositional fact." *Id.* at 884.

The report required by section 54.04(b) is very similar to the presentence investigation report required in most felony cases. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 9 (Vernon 2006). Courts have long held that such reports have sufficient indicia of reliability to aid a court in determining the appropriate sentence. *See, e.g.*, *United States v. Marin–Cuevas*, 147 F.3d 889, 895 (9th Cir.1998); *United States v. Montoya–Ortiz*, 7 F.3d 1171, 1180 (5th Cir. 1993); *People v. Otto*, 26 Cal.4th 200, 109 Cal.Rptr.2d 327, 26 P.3d 1061, 1067–69 (2001); *State v. Crossman*, 1994 WL 548712, at *5–6, 1994 Tenn.Crim.App. LEXIS 652, at *14–15 (Tenn.Crim.App. 1994); *State v. Caldwell*, 154 Wis.2d 683, 454 N.W.2d 13, 18 (Ct.App.1990); *see also Fryer v. State*, 68 S.W.3d 628, 630–33 (Tex.

Crim.App.2002) (approving trial court's consideration of punishment recommendation by victim contained in PSI); *Brown v. State*, 478 S.W.2d 550, 551 (Tex.Crim.App. 1972) ("To suggest that the judge should not use the information in the probation report because it contains 'hearsay statements' is to deny the obvious purpose of the statute.").

Finally, we note that numerous courts have found no due process violation arising from a trial court's consideration of a PSI report so long as the defendant is given a reasonable opportunity to review the report before the hearing and the opportunity to dispute the accuracy of information in the report and present controverting evidence. *See United States v. Inglesi*, 988 F.2d 500, 502 (4th Cir.1993); *United States v. Musa*, 946 F.2d 1297, 1306–08 (7th Cir. 1991); *see also* Tex.Code Crim. Proc. Ann. art. 42.12, § 9(d), (e); *DuBose v. State*, 977 S.W.2d 877, 880–81 (Tex.App.-Beaumont 1998, no pet.) (discussing defendant's burden to dispute accuracy of information in PSI); *Garcia v. State*, 930 S.W.2d 621, 623–24 (Tex.App.-Tyler 1996, no pet.) (same); *Hernandez v. State*, 900 S.W.2d 835, 839 (Tex.App.-Corpus Christi 1995, no pet.) (same); *Stancliff v. State*, 852 S.W.2d 639, 641 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd) (same), *overruled on other grounds by Whitelaw v. State*, 29 S.W.3d 129 (Tex.Crim.App.2000).

 Section 54.04(b) requires a juvenile court to provide counsel for the child with access to any reports the court will consider before the disposition hearing. Tex. Fam.Code Ann. § 54.04(b). To exercise the limited right of confrontation we

---

**13.** Juvenile social histories were first expressly required by statute in 1967 for hearings to transfer a juvenile delinquency proceeding to another county or to waive juvenile court jurisdiction and transfer the child to an adult criminal court in felony cases where the child was 15 or older. *See* Act of May 24, 1967, 60th Leg., R.S., ch. 475, § 6(d), 1967 Tex. Gen. Laws 1082, 1083 (repealed 1973).

have recognized herein, a juvenile may subpoena any necessary witnesses to challenge the accuracy of any information contained in any reports to be offered under section 54.04(b). *See In re M.R.*, 5 S.W.3d 879, 881–82 & n. 3 (Tex.App.-San Antonio 1999, pet. denied) (describing limited right of confrontation available for transfer/release hearing under section 54.11 of the Juvenile Justice Code).

## Conclusion

The juvenile probation officer's report admitted during the disposition phase of M.P.'s trial contains sufficient indicia of reliability to allow us to conclude that the court's failure to conduct the balancing test required for the admission of hearsay evidence without violating the limited due process right of confrontation described in *Morrissey* and *Gagnon* did not "probably cause the rendition of an improper judgment." *See Kelley*, 446 F.3d at 692; *Hall*, 419 F.3d at 987; *Morris*, 140 Fed.Appx. at 142–43; *Schwarz*, 250 Wis.2d 214, ¶ 22, 250 Wis.2d 214, 640 N.W.2d 527, ¶ 22; *see also Aspinall*, 389 F.3d at 344.

Therefore, we overrule M.P.'s sole issue and affirm the judgment.

Chief Justice GRAY issuing a separate opinion.

Justice VANCE, dissenting.

## OPINION

TOM GRAY, Chief Justice.

A jury found that M.P. had engaged in delinquent conduct by committing two counts of indecency with a child and one count of aggravated sexual assault of a child. The court committed M.P. to the Texas Youth Commission without a determinate sentence. M.P. contends in his sole issue that the court violated his right of confrontation under the federal and state constitutions, and particularly under *Crawford v. Washington*, by admitting during the disposition phase a written report prepared by a juvenile probation officer which contains hearsay.

### BACKGROUND

During the disposition phase, the State offered a Juvenile Court Investigation Report prepared by M.P.'s juvenile probation officer, Sha'Vonne Brown–Lewis. The report contains general background information, M.P.'s referral history, the history of services provided by the juvenile department, a narrative of "impressions" reviewing M.P.'s history and briefly stating the probation officer's recommendation that M.P. be committed to TYC, and a concluding section reviewing the dispositional alternatives and providing a list of reasons TYC is the appropriate disposition.

The report is supported by a collection of "over thirty" disciplinary referrals M.P. has received at different schools. These referrals largely consist of brief narratives prepared by the teachers who made the referrals describing the conduct and the actions taken. Some referrals include witness statements. Others include documentary evidence.

M.P. objected when the State offered the report in evidence on the basis that "information both contained in the report and, frankly, the totality of Ms. Brown's testimony" violate *Crawford v. Washington* and the Confrontation Clauses of the federal and state constitutions. Counsel identified Brown–Lewis's references to M.P.'s various referrals as a matter of concern.

After taking the matter under advisement, the court advised the parties that it would overrule the objection based on the reasoning of Indiana's Fourth District Court of Appeals in *C.C. v. State*, 826

N.E.2d 106 (Ind.Ct.App.2005). The court followed the recommendation of Brown–Lewis and committed M.P. to TYC.

## PRESERVATION

The State contends that M.P. did not properly preserve this issue for appellate review because he failed to identify for the trial court the particular portions of the report which he considered to be inadmissible. We have previously decided this same issue in the State's favor. *In re L.D.T.,* No. 10–05–00016–CV, 2006 WL 301073, 2006 Tex.App. LEXIS 1082 (Tex. App.-Waco Feb. 8, 2006, pet. denied) (mem. op.).

When an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the precise objection. *Sonnier v. State,* 913 S.W.2d 511, 518 (Tex.Crim.App.1995). The trial court should never be required to sift through challenged evidenced to segregate admissible evidence from excludable evidence. *Jones v. State,* 843 S.W.2d 487, 492 (Tex.Crim.App.1992), *abrogated on other grounds by Maxwell v. State,* 48 S.W.3d 196 (Tex.Crim.App.2001). In those instances where an exhibit contains both admissible and inadmissible evidence, a trial court may "safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection." *Id.; cf. In re D.S.,* 921 S.W.2d 383, 387–388 (Tex.App.-Corpus Christi 1996, writ dism'd w.o.j.).

Here, the comments of the prosecutor, defense counsel, and the trial court all indicate that, at best, only the general nature of M.P.'s objection was understood. But the reason for the specificity requirement cannot be met simply because the parties and the trial court have a meeting of the minds about the general subject matter of the objection. Beyond the need for the objection to direct the trial court's attention to the general issue, an objection that is sufficiently specific will inform the court of the specific evidence that is objectionable, not generally to a class of objectionable evidence.

This case presents a good example of why a specific objection is necessary and why a general objection cannot be tolerated. The defendant's objection was to "the totality of Ms. Brown's testimony." But there is no credible argument that all of Ms. Brown's testimony violated *Crawford* and the Confrontation Clauses of the federal and state constitutions. Before testimony regarding an out of court statement being offered at trial can be excluded based on a Confrontation Clause objection, the specific statement and the circumstances of the making of the statement must be evaluated. Because M.P. did not articulate an objection to specific statements, but rather made a general objection to the entirety of Ms. Brown's testimony, the general global Confrontation Clause objection did not preserve anything for appellate review. If M.P. had taken the time to identify specific portions of Ms. Brown's report, or portions of the referrals that were believed to be Confrontation Clause violations if admitted, the trial court, and this Court, could then focus on the law relevant to the allegedly objectionable statements. As it is, however, we have this vast volume of information, including the testimony of a live witness, which has been objected to as a violation of the Confrontation Clause. If the witness is on the stand to give their testimony, including the opinions of that witness, it does not generally violate the Confrontation Clause—it may be objectionable under other rules of evidence such as Rule 702, lack of personal knowledge, hearsay, etc., but not the Confrontation Clause.

When there is no clear objection to specific evidence being offered, reviewing the alleged error, for the lack of a more graphic example, is like trying to nail Jell–O to a tree. It is an amorphous concept that can change based upon minute variations in fact patterns and circumstances. Unsatisfied with the enormity of the problem facing the trial court as described by counsel for M.P., Justice Reyna even doubles the estimate of the number of disciplinary referrals attached to the report (*see* footnote 1, Reyna Op.).

Until the parties get into the contents of these reports, and by that I mean the specific statements being made in these reports, we cannot even begin a proper *Crawford* analysis. The attempted blanket objection made by trial counsel failed to direct the trial court's attention to any specific statement contained in the numerous referral reports that counsel might have considered "testimonial."

The problem of letting the general objection suffice for preservation of the Confrontation Clause issue as to specific statements is aptly demonstrated by Justice Reyna's opinion. After concluding that the issue was preserved for review, the opinion conducts a 20–page meandering tour of Sixth Amendment jurisprudence, conducts a stop-gap analysis of the Fourteenth Amendment, and brushes past the Texas Constitution and a harm analysis on its way to incidental "holdings" that have no relevance to this appeal. This is primarily because we are not reviewing any specific statement but rather a general ill-defined topic.

1. Justice Reyna is the designated author under our Internal Administrative Rules. Chief Justice Gray's opinion is a concurring opinion.

CONCLUSION

Based upon the foregoing, because the objection was not sufficiently specific to preserve the issue for appellate review, M.P.'s sole issue is overruled, and the judgment of the trial court is affirmed.

Justice VANCE dissenting.

Justice REYNA issuing a separate opinion.

BILL VANCE, Justice, dissenting.

I agree with Justice Reyna's preservation determination and his application of the due process right of confrontation,[1] but I respectfully disagree with the blanket conclusion that a juvenile has no Sixth Amendment right of confrontation during the disposition phase.

In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court resuscitated the Sixth Amendment's Confrontation Clause. As Justice Reyna recognizes, Texas courts have applied it in the punishment phase. *Ante* at 105–06; *e.g., Russeau v. State*, 171 S.W.3d 871, 880–81 (Tex.Crim.App.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 2982, 165 L.Ed.2d 989 (2006) (applying *Crawford* to introduction of prison incident and disciplinary reports and concluding that their introduction violated Confrontation Clause). And at least one other state's highest court has expressly applied *Crawford* to the punishment phase. *See Rodgers v. State*, 948 So.2d 655, 663 (Fla.2006).

I would extend those holdings to a juvenile adjudication's disposition phase.[2] The juvenile system has "become more punitive

2. " '[D]isposition is a euphemism for sentencing [ ] and is used to honor the non-criminal character of the proceedings.' " *In re K.T.*, 107 S.W.3d 65, 67 (Tex.App.-San Antonio 2003, no pet.) (quoting *In re C.S.*, 804 A.2d 307, 309 n. 2 (D.C.App.2002)).

than rehabilitative." *Hidalgo v. State,* 983 S.W.2d 746, 751 (Tex.Crim.App.1999). Juveniles now face consequences similar to adults; for example, they can be subject to a forty-year term of imprisonment. *Id.* (citing TEX. FAM.CODE ANN. § 54.04(d)(3)(A)). As a result, I believe that the balancing test employed to determine the constitutional protection afforded to a juvenile in a disposition hearing should tilt toward providing constitutional protections such as the Sixth Amendment confrontation right articulated in *Crawford:*

> The juvenile is guaranteed the same constitutional rights as an adult in a criminal proceeding because a juvenile-delinquency proceeding seeks to deprive the juvenile of his liberty. *In re Winship,* 397 U.S. 358, 359, 90 S.Ct. 1068, 1070, 25 L.Ed.2d 368 (1970). Neither the Fourteenth Amendment nor the Bill of Rights is for adults alone. *In re Gault,* 387 U.S. at 13, 87 S.Ct. at 1436.

*State v. C.J.F.,* 183 S.W.3d 841, 847 (Tex. App.-Houston [1st Dist.] 2005, pet. denied) (citations omitted); *see In re J.S.S.,* 20 S.W.3d 837, 841–44 (Tex.App.-El Paso 2000, pet. denied) (applying Fifth Amendment privilege against self-incrimination to juvenile disposition phase); *see also In re S.M.,* 207 S.W.3d 421, 425–26 (Tex.App.-Fort Worth 2006, no pet. h.) (Livingston, J., concurring) (noting conflict between Family Code section 54.11(d) and *Crawford's* Confrontation Clause protections and "the potential magnitude of the result of a transfer hearing with the lack of protection for a juvenile's right to cross-exam-

ine the witnesses who testify against him via untested written reports").

Because I believe that a juvenile should be afforded the Sixth Amendment confrontation right in the disposition phase and that the disciplinary referrals containing teachers' narratives are testimonial statements (and thus indistinguishable from the incident and disciplinary reports in *Rus-seau* ), I would find a Confrontation Clause violation by the trial court's admission of the disciplinary referrals and then proceed to a Confrontation–Clause error harm analysis.[3] *See McClenton v. State,* 167 S.W.3d 86, 94–95 (Tex.App.-Waco 2005, no pet.); *see also Davis v. State,* 203 S.W.3d 845, 849–53 (Tex.Crim.App.2006).

I respectfully dissent.

---

**3.** Because I believe that a juvenile should be afforded the Sixth Amendment confrontation right in the disposition phase, and because of the quasi-criminal nature of juvenile proceedings, I would not apply the harm analysis for civil appeals. I note that one court has applied a criminal harm analysis in a non-deter-

minate juvenile appeal. *See In re K.W.G.,* 953 S.W.2d 483, 488 (Tex.App.-Texarkana 1997, pet. denied). Meanwhile, the supreme court and others have reserved the question. *See In re D.I.B.,* 988 S.W.2d 753, 756 (Tex.1999); *In re L.R.,* 84 S.W.3d 701, 707 (Tex.App.-Houston [1st Dist.] 2002, no pet.).